1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

THOMAS GERALD JOHNSTON,                    NO.  C12-1953-RSL-JPD

9

        Plaintiff,

10

    v.                                     REPORT AND
                                           RECOMMENDATION
11

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,[1]

12

13

        Defendant.

14

15

        Plaintiff Thomas Gerald Johnston appeals the final decision of the Commissioner of the

16

Social Security Administration ("Commissioner") that denied his application for Supplemental

17

Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f,

18

after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,

the Court recommends that the Commissioner's decision be affirmed.

19

                    I.        FACTS AND PROCEDURAL HISTORY

20

        At the time of the administrative hearing, Plaintiff was a 47-year-old man with an

21

eleventh-grade education.  Administrative Record ("AR") at 44, 50.  His past work experience

22

23

        [1] Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the
defendant in this suit.  **The Clerk of Court is directed to update the docket accordingly,
and the parties are ordered to update the caption on all future filings with the Court.**

24

REPORT AND RECOMMENDATION - 1

1    includes employment as a truck driver.  AR at 176.  Plaintiff was last gainfully employed in

2    1998.  *Id.*

3         On June 25, 2010, Plaintiff filed a claim for SSI payments.[2]  AR at 153-56.  Plaintiff

4    asserts that he is disabled due to a back ailment, weak legs, and fibromyalgia.  AR at 175.

5         The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 73-

6    79, 84-92, 95-99.  Plaintiff requested a hearing, which took place on December 16, 2011.  AR

7    at 35-68.  On January 27, 2012, the ALJ issued a decision finding Plaintiff not disabled and

8    denied benefits based on his finding that Plaintiff could perform a specific job existing in

9    significant numbers in the national economy.  AR at 22-29.  Plaintiff's administrative appeal of

10   the ALJ's decision was denied by the Appeals Council, AR at 1-4, making the ALJ's ruling the

11   "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On

12   November 6, 2012, Plaintiff timely filed the present action challenging the Commissioner's

13   decision.  Dkt. 1.

14                                  II.      JURISDICTION

15        Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

16   405(g) and 1383(c)(3).

17                               III.     STANDARD OF REVIEW

18        Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

19   social security benefits when the ALJ's findings are based on legal error or not supported by

20   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

21   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

22   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

23

24        [2] At the administrative hearing, Plaintiff withdrew his application for Disability
Insurance Benefits, and amended his alleged onset date to June 25, 2010.  AR at 38.

REPORT AND RECOMMENDATION - 2

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Mr. Johnston bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are

REPORT AND RECOMMENDATION - 3

of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[3]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

---

[3] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

Commissioner evaluates the physical and mental demands of the claimant's past relevant work

to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

then the burden shifts to the Commissioner at step five to show that the claimant can perform

other work that exists in significant numbers in the national economy, taking into consideration

the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g),

416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable

to perform other work, then the claimant is found disabled and benefits may be awarded.

V.      DECISION BELOW

On January 27, 2012, the ALJ found:

1.     The claimant meets the insured status requirements of the Social
       Security Act through December 31, 1998.

2.     The claimant has not engaged in substantial gainful activity since May
       1, 1998.

3.     The claimant's degenerative disc disorder of the lumbar spine is a
       severe impairment.

4.     The claimant does not have an impairment or combination of
       impairments that meets or medically equals the severity of one of the
       listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.     The claimant has the residual functional capacity ("RFC") to perform
       less than the full range of light work as defined in 20 C.F.R. §§
       404.1567(b) and 416.967(b).  The claimant's maximum physical
       exertional capability is light.  The claimant also cannot bend, stoop,
       crouch, crawl or climb.  The claimant's maximum mental exertional
       capability is engaging in simple, repetitive tasks.

6.     The claimant is unable to perform any past relevant work.

7.     The claimant was born on XXXXX, 1963.[4]

---

[4]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 5

8.   The claimant has a limited education and is able to communicate in English.

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.  The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 1998, through the date of the decision.

AR at 24-29.

### VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1.   Whether the ALJ erred at step two by failing to include insomnia, a cognitive or memory impairment, and left hip bursitis/osteoarthritis as severe impairments;

2.   Whether the ALJ erred at step three by finding Mr. Johnston's impairments do not meet or equal Listing 1.04A;

3.   Whether the ALJ properly found Mr. Johnston not credible; and

4.   Whether the ALJ properly evaluated the opinions of consultative evaluator Gary Gaffield, D.O., and treating physician Erika Bliss, M.D.;

Dkt. 10 at 1-2.[5]

### VII.   DISCUSSION

A.   The ALJ Did Not Err at Step Two.

Plaintiff contends that the ALJ erred in excluding insomnia, cognitive disorder, and left hip bursitis as severe impairments at step two.  With regard to insomnia and cognitive disorder,

---

[5] Though Plaintiff also alleged a fifth error — the ALJ's failure to account for all limitations in the RFC assessment — this success of this allegation requires success in at least one of the previous assignments of error.  Because the Court rejects Plaintiff's first four assignments of error, the fifth likewise fails because Plaintiff has not established the existence of any error that led to an incomplete RFC assessment.  *See* Dkt. 10 at 16-17.

REPORT AND RECOMMENDATION - 6

Plaintiff argues that the ALJ should have ordered a psychological consultative examination to determine the scope of his claimed mental impairments,[6] and without such evidence, the ALJ's finding that Plaintiff can perform simple, repetitive tasks lacks support in the record.  Dkt. 12 at 2-4.  Plaintiff also argues that the ALJ erred in finding that his left hip bursitis was not severe, in light of the opinions of Drs. Gaffield and Bliss.

Taking the second issue first: for the reasons explained *infra*, Part VII.D., even if the ALJ misread medical opinions and should have limited Plaintiff to sedentary work due to, *inter alia*, left hip bursitis, this error is harmless in light of the vocational expert's testimony that Plaintiff could nonetheless perform jobs that exist in significant numbers even if he was restricted to sedentary work.  Accordingly, any step-two error related to left hip bursitis is likewise harmless.

And regarding Plaintiff's alleged mental limitations stemming from insomnia and/or a cognitive disorder, Plaintiff has not established that the ALJ erred.  Though the parties agree that the record contains references to Plaintiff's subjective complaints of memory problems and concentration limitations that could have been caused by insomnia and/or a cognitive disorder (Dkt. 11 at 15-16; Dkt. 12 at 2), Plaintiff described only physical limitations at the administrative hearing and in his disability reports, and specifically denied that his mental-health issues were severe when questioned by Administration personnel.  *See* AR at 44-61 (hearing testimony describing physical limitations), 175 (listing only physical conditions as the basis for disability in initial disability report), 211 (listing only physical conditions as the basis for disability in appeals disability report), 292 (Administration correspondence notes indicating that Plaintiff denied that his mental symptoms warranted a psychological consultative

---

[6] To the extent that Plaintiff contends that his insomnia caused *physical* limitations (*e.g.* fatigue) not fully accounted for in the ALJ's RFC assessment, he has failed to identify any objective evidence to support that contention.  *See* Dkt. 12 at 2.

REPORT AND RECOMMENDATION - 7

1    examination).  Plaintiff submitted no evidence of mental-health treatment or evaluation, and

2    there is therefore no medical evidence establishing the existence of any severe mental

3    impairment.  *See* 20 C.F.R. § 404.1512(a) ("We will consider only impairment(s) you say you

4    have or about which we receive evidence.").  Without objective medical findings establishing a

5    severe mental impairment, Plaintiff has not met his burden to establish its existence.  *See*

6    *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("[The claimant] can only establish

7    an impairment if the record includes signs — the results of "medically acceptable clinical

8    diagnostic techniques," such as tests — as well as symptoms, *i.e.*, [the claimant's]

9    representations regarding his impairment.").

10          Furthermore, the ALJ acknowledged Plaintiff's allegations regarding concentration

11   limitations (AR at 27) and indicated that he accounted for those limitations in the residual

12   functional capacity assessment, which restricted Plaintiff to work involving simple, repetitive

13   tasks.  AR at 25.  Plaintiff argues that this limitation is not sufficient, because he may not be

14   able to complete even simple, repetitive tasks with his impairments.  Dkt. 12 at 3.  This

15   argument is entirely speculative, however, because Plaintiff has failed to obtain or identify

16   medical evidence establishing the limitations he believe may exist, and the burden of proof is

17   on the claimant to establish that his impairments exist and are disabling.  *See Miller v. Heckler*,

18   770 F.2d 845, 849 (9th Cir. 1985).  Given that the medical evidence and Plaintiff's allegations

19   unequivocally focused on physical impairments, the record was not so ambiguous or

20   insufficient regarding mental impairments to trigger the ALJ's duty to further develop the

21   record.  *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to

22   develop the record further is triggered only when there is ambiguous evidence or when the

23   record is inadequate to allow for proper evaluation of the evidence.")

24   *//*

REPORT AND RECOMMENDATION - 8

B.      The ALJ Did Not Err at Step Three.

        Plaintiff contends that the ALJ erred in finding at step three that he does not meet

Listing 1.04A.  This listing requires (1) a disorder of the spine that (2) results in compromise of

a nerve root or spinal cord with (3) evidence of nerve root compression characterized by neuro-

anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by

sensory or reflex loss, and, if the lower back is involved, positive straight-leg raising test

(sitting and supine).  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.  The Commissioner

argues that there is no evidence of nerve root compression or any of the associated

characteristics, and thus the third criterion of Listing 1.04A is not met.  Dkt. 11 at 10.

        Plaintiff argues that his MRI showed "mass effect on the right L3 nerve root" and thus

nerve root compression can be inferred (Dkt. 12 at 5), but even assuming this is true, Plaintiff

has not established limitation on spinal range of motion, motor loss with sensory/reflex loss, or

positive straight-leg raising test results.  Though Plaintiff points to evidence of some decreased

motor function  in his left hip and left shoulder, this evidence was not accompanied by sensory

or reflex losses — and Plaintiff admits that there is no evidence of such losses, or any positive

straight-leg testing.  Dkt. 12 at 5.  Thus, Plaintiff has not established that the ALJ erred in

finding that he did not meet Listing 1.04A.

        Plaintiff attempts to argue that he equals Listing 1.04A, when his hip pain, insomnia,

and cognitive/memory limitations are considered.  Dkt. 12 at 5.  Plaintiff does not, however,

offer a plausible theory as to how these symptoms in combination equal the Listing 1.04A

criteria, or cite any medical evidence to that effect, and this argument should be thus rejected.

*See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

C.      The ALJ Did Not Err in Discounting Plaintiff's Credibility.

        The ALJ provided a number of reasons to discount Plaintiff's credibility.  First, he

1    referenced medical evidence that fails to corroborate Plaintiff's allegations of disabling back

2    and leg pain.  AR at 26.  Second, the ALJ described Plaintiff's self-reported daily activities —

3    self-care activities, caring for pets, interacting with friends and family, taking multiple road

4    trips to Texas, and performing labor such as digging ditches and heavy house-cleaning — that

5    are inconsistent with allegations of disability.  *Id.*  Third, the ALJ identified inconsistent

6    statements regarding activities and treatment experiences.  AR at 27.  Lastly, the ALJ

7    mentioned that his personal observations of Plaintiff at the hearing were inconsistent with

8    Plaintiff's allegations.  AR at 26-27.

9           The ALJ's first reason is clear and convincing.  Plaintiff's only challenge is to the

10   sufficiency of this reason: he cites authority holding that lack of corroboration in the medical

11   record cannot be the sole reason to discount a claimant's subjective allegations of pain.  *See,*

12   *e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony

13   cannot be rejected on the sole ground that it is not fully corroborated by objective medical

14   evidence, the medical evidence is still a relevant factor in determining the severity of the

15   claimant's pain and its disabling effects.").  But lack of corroboration was not the ALJ's sole

16   reason to discount Plaintiff's self-report, and thus Plaintiff has not established that it was

17   improper for the ALJ to consider the medical evidence.  Similarly, though an ALJ's personal

18   observations cannot constitute the sole reason to discount a claimant's credibility, Plaintiff has

19   not established that the ALJ erred in considering this factor among others.  *See Quang Van*

20   *Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989) (holding that an ALJ may rely, in part, on

21   his or her own observations of a claimant in evaluating credibility).

22          The ALJ's second reason is also clear and convincing.  The ALJ cited Plaintiff's

23   testimony that he could sit for half an hour at the "very, very most," due to pain, but also

24   pointed out that he drove to Texas in February 2010 and planned another road trip there in July

REPORT AND RECOMMENDATION - 10

2010.  *Compare* AR at 57 (hearing testimony regarding sitting limitations) *with* AR 59-60,

252, 260-62 (describing road trip to Texas and travel plans).  The ALJ also cited evidence in

the record showing that Plaintiff could engage in physical activities that undermine the

credibility of his disability allegations, including digging ditches and heavy house-cleaning.

*See* AR at 257, 259.  Though Plaintiff argues that he was only able to complete these activities

because he worked at his own pace and sometimes still experienced pain (Dkt. 10 at 11-12),

the ALJ nonetheless reasonably construed Plaintiff's daily activities as inconsistent with his

allegations of inability to do anything much more than "[b]asically just sit around, if I can."

AR at 61.  *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)

("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's

conclusion that must be upheld.").

        Some of the inconsistent statements identified by the ALJ also constitute a clear and

convincing reason to discount Plaintiff's credibility.  The ALJ identified circumstances where

Plaintiff admitted to lifting more than he claimed he could at the hearing: at the hearing, he

testified that he "can't really lift anything" (AR at 51), but he reported to his doctor in August

2009 that he lifted a car battery and gallons of milk.  AR at 273.  Plaintiff also testified at the

hearing that his providers recommended that he cease physical therapy because it was

exacerbating his symptoms (AR at 47), but the ALJ cited treatment notes showing that

providers referred Plaintiff to physical therapy twice but Plaintiff failed to follow through.  *See*

AR at 246.  There is no indication in the medical evidence of record that providers suggested

that Plaintiff discontinue physical therapy.  These inconsistent statements[7] are clear and

---

        [7] Though the ALJ also found other statements to be inconsistent — specifically
regarding Plaintiff's ability to mow the lawn, and the existence of 2010 imaging records — the
ALJ's rationale is questionable.  Plaintiff's statements regarding mowing the lawn are not
necessarily inconsistent, and the ALJ acknowledged the existence of a 2010 MRI at the

1  convincing reasons to discount Plaintiff's credibility.  *See Light v. Comm'r of Social Sec.*

2  *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that ALJ appropriately considers

3  inconsistencies between a claimant's testimony and his or her conduct when evaluating

4  credibility).

5        Thus, because the ALJ provided numerous clear and convincing reasons to discount

6  Plaintiff's credibility, the Court should affirm the ALJ's adverse credibility determination.

7  D.     <u>Any Errors in Evaluating the Opinions of Drs. Gaffield and Bliss are Harmless.</u>

8        Plaintiff assigns error to the ALJ's assessment of the opinions of consultative examiner

9  Gary Gaffield, D.O., and treating doctor Erika Bliss, M.D., and the Court will address each

10  provider in turn.

11       1.    <u>Dr. Gaffield</u>

12        The Commissioner concedes that though the ALJ purported to give significant weight

13  to Dr. Gaffield's opinion, he failed to account for all the limitations (specifically the

14  standing/walking restrictions) identified by Dr. Gaffield (AR at 27) — and that if he had, he

15  should have restricted Plaintiff to sedentary work. Dkt. 11 at 13-15.  This error is harmless,

16  according to the Commissioner, because the vocational expert identified a job that exists in

17  significant numbers even a hypothetical claimant limited to sedentary work could perform, in

18  response to counsel's cross-examination.  *Id.* (citing AR at 66-67).

19        Plaintiff argues that the ALJ's error regarding Dr. Gaffield's opinion cannot be

20  harmless because it "means the ALJ's decision is without substantial evidence." Dkt. 12 at 11.

21  This argument is not particularly well-elucidated: Plaintiff does not explain why this error in

22
23
24  administrative but refused to consider it.  *See* AR at 64, 67, 191, 287-88, 314-15.  Though this reasoning may be improper, it does not negate the validity of the overall credibility determination and the other reasons are supported by substantial evidence.  Thus, any impropriety here is at most harmless error.  *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

REPORT AND RECOMMENDATION - 12

1   particular is prejudicial, despite the vocational expert's testimony in response to counsel's

2   hypothetical.  Courts find that errors that are "'inconsequential to the ultimate nondisability

3   determination'" are harmless and therefore not reversible.  *See Molina v. Astrue*, 674 F.3d

4   1104, 1122 (9th Cir. 2012) (quoting *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d

5   1162 (9th Cir. 2008)).  Because the record contains substantial evidence — namely, the

6   vocational expert's testimony — showing that even if Plaintiff had been restricted to sedentary

7   work, consistent with Dr. Gaffield's opinion, he could have nonetheless performed jobs

8   existing in significant numbers in the national economy, the Court should find that the ALJ's

9   error with respect to Dr. Gaffield is harmless.

10          2.      Dr. Bliss

11          Dr. Bliss opined that Plaintiff can sit most of the day, frequently lift/carry two pounds

12   and lift a maximum of ten pounds.  AR at 312.  The ALJ rejected this opinion for a number of

13   reasons, including the lack of specific medical findings supporting the opinion, the reliance on

14   Plaintiff's non-credible self-report, and inconsistencies between the opinion and other medical

15   evidence and Plaintiff's daily activities.  AR at 27.  According to Plaintiff, these reasons are

16   not legitimate and if the ALJ would have credited Dr. Bliss's opinion, he would have restricted

17   Plaintiff to sedentary work instead of light work.

18          The Court disagrees.  The opinion is brief and conclusory, and the corresponding

19   treatment notes do not contain clinical findings supporting the opinion.  AR at 308-10, 312-23.

20   This is a sufficient reason to discount a provider's opinion.  *See Thomas*, 278 F.3d at 957 ("The

21   ALJ need not accept the opinion of any physician, including a treating physician, if that

22   opinion is brief, conclusory, and inadequately supported by clinical findings.").  Furthermore,

23   as explained *supra*, Part VII.C, the ALJ did not err in discounting Plaintiff's credibility, and

24   thus properly discounted the opinion of Dr. Bliss to the extent that she relied on Plaintiff's non-

REPORT AND RECOMMENDATION - 13

credible self-report.  *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  Lastly, the ALJ identified a medical examination with unremarkable findings that contradicts Dr. Bliss's opinion, and he was entitled to resolve that inconsistency against Dr. Bliss's opinion.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding it not improper for an ALJ to reject an opinion presenting inconsistencies with the medical record).

But even if the ALJ had erred in discounting Dr. Bliss's opinion, this error would be harmless because, as discussed *supra*, Part VII.D.1, the vocational expert testified that even if Plaintiff were restricted to sedentary work (as Dr. Bliss's opinion would suggest), he could nonetheless perform a job existing in significant numbers.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED.    A proposed order accompanies this Report and Recommendation.

DATED this 22nd day of July, 2013.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14